J-A13021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD LEE BENTLER | : | |
| | : | |
| Appellant | : | No. 558 MDA 2022 |

Appeal from the Judgment Entered November 24, 2021
In the Court of Common Pleas of Susquehanna County Criminal Division
at No(s): CP-58-CR-0000277-2020

BEFORE: BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:  **FILED: JULY 26, 2023**

Edward Lee Bentler appeals from the judgment of sentence, entered in the Court of Common Pleas of Susquehanna County. After careful review, we affirm on the basis of the opinion authored by the Honorable Jason J. Legg.

The trial court summarized the facts as follows:

On July 20, 2021, Robert Thatcher, the Chief of the Hallstead Fire Company, was dispatched to a boat launch area off Harmony Road, adjacent to the Susquehanna River in Great Bend Township, Susquehanna County, Pennsylvania. Thatcher was dispatched for a one-vehicle accident involving a vehicle having left the road and being stuck in a ditch. When Thatcher arrived at the scene, he observed Bentler sitting on a bucket next to a pickup truck. Thatcher asked Bentler if he was okay, and Bentler responded by indicating that he had a lot going on in his life. Bentler was initially in a hunched-over position but sat up straighter as he spoke and Thatcher was able to observe a rifle on Bentler's lap. Because he had observed a weapon, Thatcher removed himself from the scene and called for the State Police to intervene. From a distance,

---

[*] Former Justice specially assigned to the Superior Court.

Thatcher continued to watch Bentler. Bentler remained seated on the bucket until the first state trooper arrived and then Bentler stood up.

Trooper [Taylor] Smith, Trooper [Gregory] Yanochko and Corporal [Nicholas] Nederostek arrived in close proximity to each other— all in separate vehicles, two marked and one unmarked. Trooper Smith arrived prior to the other two troopers and discovered Bentler standing behind the pickup truck such that Trooper Smith could only see Bentler's upper body. Trooper Smith had been informed enroute that Bentler had a rifle. Trooper Smith instructed Bentler to put his hands up. Bentler would put one hand up and then the other but never both hands up at the same time. Bentler made statements that he was seeking help and Trooper Smith indicated that he would provide help but that Bentler had to comply with his commands. Trooper Smith eventually noticed that Bentler was holding a scoped rifle. Bentler continued to refuse to put down the scoped rifle.

Thereafter, Trooper Yanochko and [Corporal] Nederostek arrived on the scene. Trooper Smith attempted to switch from his service handgun to his AR-15 rifle. While positioned behind their vehicles an approximately 50 yards from Bentler, Trooper Yanochko and [Corporal] Nederostek pointed AR-15 rifles at Bentler. Bentler was again ordered to drop the weapon on multiple occasions but refused to comply and told the troopers to drop their weapons instead. Bentler never shouldered his rifle, never looked through the scope or aimed the rifle at the troopers. During the altercation, Bentler remained in a position where the pickup truck provided partial cover, then Bentler flicked his cigarette away and moved suddenly from behind the pickup truck out into the open with the barrel of the rifle facing in the general direction of the state troopers. After Bentler moved into the open area and made a movement to raise the rifle up, he was shot by [Corporal] Nederostek. Bentler was shot prior to Trooper Smith being able to switch weapons. [Corporal] Nederostek shot Bentler three times.

Trial Court Opinion, 3/9/22, at 4-6 (citations omitted).

Bentler was charged with, *inter alia*, three counts each of terroristic threats,[1] aggravated assault,[2] and simple assault,[3] and one count of possession of firearm prohibited.[4]  A jury convicted Bentler of the aforementioned charges and the court sentenced him to an aggregate term of imprisonment of 5-20 years.  Bentler filed a timely post-sentence motion for judgment of acquittal, which the trial court denied.  This timely appeal followed.  Both Bentler and the trial court have complied with Pa.R.A.P. 1925.

Bentler raises the following issues for our review:

1. Did the trial court err by denying [Bentler's] motions for judgment of acquittal for sufficiency of the evidence for charges of aggravated assault, terroristic threats, and simple assault where the evidence presented by the Commonwealth was uncontradicted [sic] and insufficient as a matter of law to establish the elements of the crimes?

2. Did the trial court err by denying the [Bentler's] motions for judgment of acquittal for sufficiency of the evidence for the charge of possession of a firearm by a person not to possess where the Commonwealth's only "proof" of []Bentler's prior enumerated conviction was a docket sheet [that] was improperly certified, was not the best evidence, and was

_____

[1] 18 Pa.C.S.A. § 2706.

[2] *Id.* at § 2702.

[3] *Id.* at § 2701.

[4] *Id.* at § 6105.  This count was not initially presented to the jury as the trial court had granted Bentler's request to bifurcate so as to avoid prejudice that might have resulted had the jury learned of Bentler's prior felony conviction before reaching a verdict on the other counts.  After the verdict, the Commonwealth presented evidence of Bentler's prior felony conviction, and the jury deliberated and convicted him of possession of a firearm prohibited. *See* Trial Court Opinion, 3/9/22, at 3 n.1.

- 3 -

only admitted a sidebar without any witness testimony or presentation?

Appellant's Brief, at 3-4.

Our standard of review regarding sufficiency of the evidence claims is well-established: "[W]hether the evidence, viewed in the light most favorable to the Commonwealth, is sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Laird**, 988 A.2d 618, 624 (Pa. 2010), citing **Commonwealth v. Watkins**, 843 A.2d 1203, 1211 (Pa. 2003). Under this standard, this Court

> may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

**Commonwealth v. DiStefano**, 782 A.2d 574, 582 (Pa. Super. 2001) (citations omitted). As such, it is within the province of the jury as fact-finder to make credibility determinations and reasonable inferences from the evidence presented, believe some, all, or none of the evidence, and ultimately

- 4 -

determine the guilt or innocence of the defendant. ***Id. See also Commonwealth v. Gooding***, 818 A.2d 546, 549 (Pa. Super. 2003).

After reviewing the parties' briefs, the relevant case law, and the record on appeal, we conclude that Judge Legg has properly disposed of Bentler's claims, and we rely upon Judge Legg's opinion to affirm Bentler's judgment of sentence. ***See*** Trial Court Opinion, 3/9/22, at 7-15. We instruct the parties to attach a copy of the trial court's opinion in the event of further proceedings in the matter.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2023

**IN THE COURT OF COMMON PLEAS OF
SUSQUEHANNA COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| vs. | : | |
| | : | No. 2020 – 277 C.R. |
| EDWARD LEE BENTLER, | : | |
| Defendant. | : | |

## OPINION

### I.    Procedural History

On July 20, 2020, a police criminal complaint was filed on defendant Edward Lee Bentler (hereinafter referred to as Bentler) for the following criminal acts: (1) three counts of attempted homicide of a law enforcement officer under 18 Pa. C.S. § 2507(a); (2) four counts of aggravated assault on an enumerated person 18 Pa. C.S. § 2702(a)(2); (3) two counts of receiving stolen property under 18 Pa. C.S. § 3925(a); (4) one count of person not to possess firearm under 18 Pa. C.S. § 6105(a)(1); (5) four counts of terroristic threats under 18 Pa. C.S. § 2706(a)(1); (6) four counts of simple assault under 18 Pa. C.S. § 2701(a)(1); and (7) four counts of recklessly endangering another person under 18 Pa. C.S. § 2705. On July 22, 2020, a preliminary arraignment was conducted, bail was denied and Bentler was remanded to the Susquehanna County Correctional Facility.

On August 10, 2020, a preliminary hearing was conducted and all of the charges were bound over to the Court of Common Pleas. Bentler's bail was then modified to $50,000 unsecured and Bentler was released from the Susquehanna County Correctional Facility and placed on bail supervision. On August 30, 2021, Bentler filed a written waiver of his formal arraignment.

1

On September 14, 2020, the Commonwealth filed its criminal information that contained the same counts as set forth in the criminal complaint, with the exception that one count of receiving stolen property was eliminated. On May 5, 2021, the probation department sought to revoke Bentler's bail based upon violations of his bail supervision. On May 19, 2021, the court denied the request to revoke Bentler's bail supervision. On June 16, 2021, the probation department filed another petition seeking to revoke bail and, on June 17, 2021, the court granted the motion, revoked the unsecured bail, and reset bail in the amount of $5,000 straight monetary bail. On June 17, 2021, Bentler posted bail and was released from incarceration.

On June 28, 2021, the Commonwealth filed a motion seeking to join this case for trial with a companion case involving an assault and theft of a firearm, contending that the evidence in both cases was similar or identical.[1] On July 7, 2021, the court denied the Commonwealth's request for joinder.

The matter was scheduled for jury selection on July 12, 2021. Prior to jury selection, Bentler requested that the court sever the firearms charge from the other charges in this case so as to avoid any potential prejudice to Bentler from the jury learning of his prior felony conviction before deliberating on the other charges. On July 12, 2021, the court granted Bentler's motion for severance and the parties agreed to bifurcate the criminal trial so as to submit the firearms charge only after the jury had reached a verdict on the other counts. The court also directed the Commonwealth to limit the testimony of Enos White and Trooper Joshua Oliver to recount the theft of the

---

[1] In the theft case, it was alleged that Bentler went to the residence of Enos White, assaulted White and stole his firearm. The next day, Bentler committed the acts that formed the basis for this criminal prosecution, allegedly using the firearm that he had stolen from White on the previous day.

firearm without testifying to the assaultive behavior. The court also prohibited the Commonwealth from presenting evidence of two knives found in a pickup truck and any reference to a toxicology report related to any substances found in Bentler's system prior to the incident.

On July 12, 2021, the Commonwealth filed an amended information eliminating four counts of aggravated assault under 18 Pa. C.S. § 2702(a)(2) and replacing those counts with charges of aggravated assault under 18 Pa. C.S. § 2702(a)(6). The matter then proceeded to trial. At the conclusion of the Commonwealth's case, Bentler made a motion for judgment of acquittal. After oral argument on that motion, the court granted the motion for judgment of acquittal as to the following counts: (1) Counts 1, 2 and 3 (Attempted Homicide); (2) Clount 4 (Receiving Stolen Property); (3) Count 6 (Terroristic Threats); (4) Counts 10, 11, 12 and 13 (Recklessly Endangering Another Person); (5) Count 14 (Aggravated Assault); and (6) Count 18 (Simple Assault). Bentler presented no evidence and the remaining counts were submitted to the jury for their deliberation.[2] After closing arguments and instructions, the jury reached a verdict and found Bentler guilty of the following counts: (1) Counts 7, 8 and 9 (Terroristic Threats); (2) Counts 15, 16 and 17 (Aggravated Assault); and (3) Counts 19, 20 and 21 (Simple Assault). Upon a motion from the Commonwealth, the court revoked Bentler's bail and remanded him to the Susquehanna County Correctional Facility.

---

[2]      Count 5, Possession of Firearm Prohibited under 18 Pa. C.S. § 6105, was not initially presented to the jury as the court had, upon Bentler's request, bifurcated the trial so as to avoid any prejudice to Bentler that might have resulted if the jury had learned of Bentler's prior felony conviction before reaching a verdict on the other counts. After the initial verdict was received, the Commonwealth then presented evidence of Bentler's prior felony conviction, the jury proceeded back to deliberate and thereafter convicted Bentler on Count 5.

3

On November 24, 2021, the court sentenced Bentler to an aggregate period of incarceration on all counts of 5 years to 20 years in a state correctional facility. On December 3, 2021, Bentler filed a post-sentence motion for judgment of acquittal, renewing arguments previously made at the time of the trial. On February 16, 2022, oral argument was conducted on those motions and the matter is now ripe for disposition.

## II.     Statement of Facts

On July 19, 2020, Bentler took a pickup truck belonging to Diana Phillips from her residence in New Milford, Pennsylvania. (N.T., July 13, 2021, morning session, at 44-45.)[3] Thereafter, Bentler arrived in Phillips' pickup truck at the residence of Enos White in Susquehanna, Pennsylvania, stole a .22 caliber rifle and then left in the pickup truck. (Id. at 47-51.) The rifle was loaded with ammunition when Bentler took it from White's residence. (Id. at 51.) As a result of these incidents, on that same day, criminal charges were filed against Bentler and an arrest warrant was obtained. (Id. at 57.)

On July 20, 2021, Robert Thatcher, the Chief of the Hallstead Fire Company, was dispatched to a boat launch area off Harmony Road, adjacent to the Susquehanna River in Great Bend Township, Susquehanna County, Pennsylvania. (Id. at 75.) Thatcher was dispatched for a one-vehicle accident involving a vehicle having left the road and being stuck in a ditch. (Id.) When Thatcher arrived at the scene, he observed Bentler sitting on a bucket next to a pickup truck. (Id.) Thatcher asked Bentler if he was okay, and Bentler responded by indicating that he had a lot going on in his life. (Id. at 76.) Bentler was initially in a hunched-over position but sat up straighter as he spoke

---

[3]     Phillips initially reported that Bentler had stolen her pickup truck. (Id. at 56.) Phillips later recanted her claim that Bentler had stolen her pickup truck and those charges were dismissed. (Id. at 58.)

4

and Thatcher was able to observe a rifle on Bentler's lap. (Id.) Because he had observed a weapon, Thatcher removed himself from the scene and called for the State Police to intervene. (Id.) From a distance, Thatcher continued to watch Bentler. (Id. at 80.) Bentler remained seated on the bucket until the first state police trooper arrived and then Bentler stood up. (Id.)

Trooper Smith, Trooper Yanochko and Corporal Nederostek arrived in close proximity to each other – all in separate vehicles, two marked and one unmarked. (Id. at 97.) Trooper Smith arrived prior to the other two troopers and discovered Bentler standing behind the pickup truck such that Trooper Smith could only see Bentler's upper body. (Id. at 139.) Trooper Smith had been informed enroute that Bentler had a rifle. (Id. at 138.) Trooper Smith instructed Bentler to put his hands up. (Id. at 139.) Bentler would put one hand up and then the other but never both hands up at the same time. (Id.) Bentler made statements that he was seeking help and Trooper Smith indicated that he would provide help but that Bentler had to comply with his commands. (Id.) Trooper Smith eventually noticed that Bentler was holding a scoped rifle. (Id.) Bentler continued to refuse to put down the scoped rifle. (Id. at 142.)

Thereafter, Trooper Yanochko and Cpl. Nederostek arrived on the scene. Trooper Smith attempted to switch from his service handgun to his AR-15 rifle. (Id. at 143.) While positioned behind their vehicles and approximately 50 yards from Bentler, Trooper Yanochko and Cpl. Nederostek pointed AR-15 rifles at Bentler. (Id. at 99-100, 102, 105.) Bentler was again ordered to drop the weapon on multiple occasions but refused to comply and told the troopers to drop their weapons instead. (Id. at 100-01.) Bentler never shouldered the rifle, never looked through the scope or aimed the rifle at

5

the troopers. (Id. at 105.) During the altercation, Bentler remained in a position where the pickup truck provided partial cover, then Bentler flicked his cigarette away and moved suddenly from behind the pickup truck out into the open with the barrel of the rifle facing in the general direction of the state troopers. (Id. at 106; N.T., July 13, 2021, afternoon session, at 67-68, 82.) After Bentler moved into the open area and made a movement to raise the rifle up, he was shot by Cpl. Nederostek. (Id. (morning session) at 106, 108.) Bentler was shot prior to Trooper Smith being able to switch weapons. (Id. at 143-44.) Cpl. Nederostek shot Bentler three times. (Id. (afternoon session) at 68.)

### III. Discussion

#### a. Standard of Review

"A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding the charge." Commonwealth v. Foster, 33 A.3d 632, 635 (Pa. Super. 2011) (quoting Commonwealth v. Hutchinson, 947 A.2d 800, 805-06 (Pa. Super. 2008), appeal denied, 980 A.2d 606 (Pa. 2009)). Where a defendant is challenging the sufficiency of the evidence, the following standard must be applied:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in a light most favorable to the verdict winner, there is sufficient evidence to enable a fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be established by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden

6

of proving every element of a crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Quel, 27 A.3d 1033, 1037-38 (Pa. Super. 2011).

### b. Certified Docket Sheet

Bentler contends that this court erred when it admitted Commonwealth Exhibit 6, which was a certified copy of the docket sheet for a criminal case assigned Susquehanna County criminal case number CP-58-0000348-2007. (Comm. Ex. 6.) The docket sheet reflected that Bentler entered a guilty plea in that case on April 7, 2008 to a felony burglary offense and that he was sentenced for that offense on May 22, 2008 to a period of incarceration of 2 years to 6 years. (Comm. Ex. 6.) The docket sheet was certified by the Susquehanna County Clerk of Courts Margaret Krupinski through her deputy, Kathryn Spence. (Comm. Ex. 6.) In addition to the written certification, the document also bore the raised seal of the Susquehanna County Clerk of Courts.

Pursuant to 42 Pa. C.S. § 6103, an official record "may be evidenced by . . . a copy attested by the officer having the legal custody of the record, or by that officer's deputy, and accompanied by a certificate that the officer has custody." Id.; see 42 Pa. C.S. § 5328(a) (noting that any public domestic record may be admitted provided it is authenticated and sealed by the public officer having custody of the record); Rawson v. PennDOT, 99 A.3d 143, 148 (Pa. Cmwlth. 2014) (holding that certified copy of "sentencing sheet" was properly admitted as proof of conviction); Commonwealth v. Smith, 563 A.2d 905, 909 (Pa. Super. 1989) ("A copy of an official record which is

7

certified by the legal custodian as true and correct and which bears the seal of his office authenticates itself."). Commonwealth Exhibit 6 complies with these requirements: (1) it is certified and attested to by the Susquehanna County Clerk of Courts; (2) it is a record from the Susquehanna County Clerk of Courts; and (3) it bears the raised seal of the Susquehanna County Clerk of Courts. Courts have recognized that certified docket sheets are sufficient to demonstrate proof of conviction. See Rawson, 99 A.3d at 143; State Dental Council & Examining Bd. v. Friedman, 367 A.2d 363, 366 (Pa. Cmwlth. 1976) (finding certified copy of docket entry of nolo contendere plea admissible as proof of conviction in administrative hearing); see also U.S. v. Jones, 700 F.3d 615, 629 (1st Cir. 2012), cert. denied, 568 U.S. 1243 (2013); U.S. v. Loera, 923 F.2d 725, 730 (9th Cir.), cert. denied, 502 U.S. 854 (1991); U.S. v. Sills, 692 F.Supp.2d 792, 800 (E.D. Mich. 2010) (finding certified docket entry of prior conviction admissible as "part of a public record recorded by a judicial office"); Duck v. State, 225 So.3d 1, 4 (Miss. Ct. App. 2017), cert. denied, 233 So.2d 822 (Miss. 2018); State v. Troy, 86 A.3d 591, 595 n.7 (Me. 2014) (noting that docket entries confirming defendant's incarceration were "admissible under the business records or public records exceptions to the hearsay rule"); Commonwealth v. McGillivary, 940 N.E.2d 506, 513 (Mass. App. Ct. 2011); Wright v. State, 709 So.2d 1318, 1320 (Ala. Ct. App. 1997); Stanley v. State, 515 N.E.2d 1117, 1120 (Ind. 1987); Williams v. State, 390 So.2d 310, 312 (Ala. Ct. App. 1980) ("The proper method of proving the prior conviction is not through the testimony of the circuit clerk, but rather by a certified copy of the minute entry showing the prior conviction."); Kessler v. State, 355 N.E.2d 262, 265-66 (Ind. Ct. App. 1976); State v. Christensen, 210 P. 376, 377 (Wash. 1922). Significantly, Bentler has never asserted

8

or claimed that the certified record itself is inaccurate. Rather, Bentler contends that the Commonwealth should have presented the sentencing order itself coupled with the actual testimony of the Clerk of Courts to authenticate it. As noted, the docket sheet constituted both a public domestic record and an official record, it was certified as being a true and accurate copy of the record maintained by the Susquehanna County Clerk of Courts and the certification and attestation bore the raised seal of the Susquehanna County Clerk of Courts. The Commonwealth complied with the statutory provisions relating to this official docket sheet and it was properly admitted. For this reason, Bentler's motion for judgment of acquittal on this issue will be denied.

### c. Terroristic Threats (18 Pa. C.S. § 2706(a)(1))

Bentler contends that judgment of acquittal is necessary as to the three counts of terroristic threats because the Commonwealth never presented any evidence that Bentler communicated a threat to the three state troopers. At oral argument, Bentler argued that the criminal information – and the amended criminal information – both allege that Bentler "did threaten to shoot the victims." Bentler asserts that the Commonwealth presented no evidence of any verbal threat to shoot the three state troopers. Bentler also contends that his non-verbal behavior was likewise insufficient to convey any threat to the three state troopers.

In order to prove that Bentler committed a terroristic threat, the Commonwealth must demonstrate: (1) that Bentler communicated a threat to perform a crime of violence; and (2) the communication occurred with reckless disregard with respect to the potential that the three troopers would be terrorized. See Commonwealth v. Jackson, 215 A.3d 972, 981 (Pa. Super. 2019). In this regard, the terroristic threat

9

statute is intended to protect victims from the distress resulting from a sense of loss of personal security. Id. Significantly, the Commonwealth need not demonstrate that Bentler actually threatened to commit a specific crime of violence; rather, the violent acts may be inferred from the totality of the circumstances surrounding Bentler's threatening behavior. Id.

In a closely analogous case, Commonwealth v. Kline, 201 A.3d 1288 (Pa. Super. 2019), the Superior Court affirmed a conviction for terroristic threats where the defendant never actually voiced a threat of violence toward the victim. In that case, the defendant and the victim were neighbors, the defendant would routinely follow the victim up and down her driveway just staring at her, and, then, on one occasion, the victim stepped out in front of the victim's car and pointed his fingers at the victim as if he were holding a gun and pretended to shoot the victim. Id. at 1289. The victim reported the matter to the State Police and the defendant was arrested for terroristic threats. Id. The case proceeded to trial and the defendant was convicted and sentenced to 3 to 23 months imprisonment. Id. The defendant appealed the conviction contending that his non-verbal gestures were insufficient to demonstrate that he ever communicated a threat of violence toward the victim. Id. at 1290. In rejecting the defendant's argument, the Superior Court concluded:

> With regard to whether [defendant's] gesture constituted a communication, we take note that under section 2706, a communication may be either direct or indirect and may be conveyed in person or by written means. While certain non-verbal gestures may not rise to the level of a communication as intended under section 2706, here, combining the menacing gesture of a shooting gun recoiling, while pointed at the victim, with Kline's past stalking-like behavior in relation to the victim, the jury could have concluded that he "conveyed" a threat to commit a crime of violence toward the victim.

10

Id. at 1291.

This case presents a far more egregious non-verbal act than that presented in Kline. In this case, Bentler actually possessed a rifle – not an imaginary finger weapon. Bentler refused repetitive attempts to get him to surrender the rifle and surrender himself peacefully. In response to the demands to disarm, Bentler repeatedly told the state troopers that they needed to relinquish their weapons. In the MVR recording of the shooting, Bentler can be seen pacing back and forth behind the cover of the pickup truck in an agitated manner while smoking a cigarette. (Comm. Ex. 8.) (Id.) Without any warning, Bentler flicked his cigarette to the ground and stepped from behind the pickup truck into the open area while holding the rifle with both hands. (Id.) The rifle was pointed in the general direction of the responding state troopers and when Bentler attempted to raise the rifle, he was shot by Cpl. Nederostak. (Id.)[4] In reviewing the evidence in a light most favorable to the Commonwealth, Bentler engaged in a clear non-verbal communication which a jury could reasonably conclude conveyed a threat to commit a crime of violence. Kline, 201 A.3d at 1291; see Commonwealth v. Molina-Torres, 2019 WL 55866488, at *2 (Pa. Super. 2019) (finding that holding and waiving a knife and pointing it at victim was enough to support conviction for terroristic threats even where no threat was verbalized).[5] For these reasons, Bentler's renewed motion for a judgment of acquittal will be denied.

---

[4]     The court recognizes that Cpl. Nederostak did not specifically testify to observing Bentler raise the rifle but Trooper Yanochko testified that Bentler did attempt to raise the rifle prior to being shot. In viewing the evidence in a light most favorable to the Commonwealth as required at this procedural stage, including the video of the shooting, the evidence supports Trooper Yanochko's testimony that Bentler was raising the rifle upward just prior to being shot.
[5]     Pursuant to 210 Pa. Code 65.37, the unpublished Molina-Torres decision is considered for its persuasive authority only.

11

### d. Aggravated Assault (18 Pa. C.S. § 2702(a)(6))

Bentler contends that the Commonwealth failed to present competent evidence that Bentler had the *mens rea* necessary to support a conviction for aggravated assault under 18 Pa. C.S. § 2702(a)(6). Bentler argues that the Commonwealth lacks sufficient evidence to demonstrate that he had the *specific intent* to place the three state troopers in fear of imminent serious bodily injury as required under 18 Pa. C.S. § 2702(a)(6). The Commonwealth counters by arguing that the jury properly and reasonably inferred Bentler's specific intent based upon the totality of the evidence presented.

An aggravated assault under § 2702(a)(6) requires proof that a defendant "attempt[ed] by *physical menace* to put [a police officer] while in the performance of duty, in fear of imminent serious bodily injury." Id. (emphasis added). "Intent can be proven by circumstantial evidence and may be inferred from the defendant's conduct under the attendant circumstances." Commonwealth v. Reynolds, 835 A.2d 720, 726 (Pa. Super. 2003). Given that Bentler never vocalized any particular threat, the question becomes whether there was sufficient evidence presented by the Commonwealth from which the jury could reasonably infer that Bentler intended to place the three state troopers in fear of imminent serious bodily injury.

In Commonwealth v. Repko, 817 A.2d 549 (Pa. Super. 2003), the Superior Court affirmed a conviction under § 2702(a)(6) based upon analogous physically menacing behavior that placed a police officer in fear of imminent serious bodily injury.[6] In Repko,

---

[6] A different portion of the Repko ruling relating to an aggravated assault charge under § 2702(a)(1) was subsequently overruled by an *en banc* panel of the Superior Court. See Commonwealth v. Matthews, 870 A.2d 924 (Pa. Super. 2005), aff'd, 900 A.2d 1254 (Pa. 2006). The portion of the Repko decision related to § 2702(a)(6) remains good law.

12

the defendant exited a house holding a hostage around her neck while also carrying a shotgun in his free hand. Id. at 553. A police officer identified himself and directed the defendant to drop the weapon. Id. Thereafter, the defendant brought the shotgun up and pointed it at the police officer. Id. at 554. Based upon these circumstances, the Superior Court conclude that "the evidence supported a finding that [the defendant] intended to place the officer in fear of serious bodily injury through the use of menacing activity when [the defendant] raised his shotgun and pointed it at the officer. Indeed, there was no evidence in the record that [the defendant] had any lawful intention when he raised his weapon in response to the officer's directive to drop it." Id. For this reason, the Superior Court affirmed the defendant's conviction under 18 Pa. C.S. § 2702(a)(6).

In reaching its decision in Repko, the Superior Court relied upon Commonwealth v. Little, 614 A.2d 1146 (Pa. Super.), appeal denied, 618 A.2d 399 (Pa. 1992), where the Superior Court affirmed a simple assault conviction under § 2701(a)(3), which makes it a crime to attempt "by physical menace to put another person in fear of imminent serious bodily injury." Id. at 1148.[7] In recognizing that the pertinent language in § 2701(a)(3) and § 2702(a)(6) is identical, the Superior Court found that Little was instructive as to what type of conduct was sufficient to constitute physically menacing behavior that would place a person in fear of imminent serious bodily injury. Repko,

---

[7]     Section § 2701(a)(3) has identical language as § 2702(a)(6) except that § 2702(a)(6) protects certain enumerated persons, such as police officers, from such physically menacing behaviors and increases the grading to a felony offense. Thus, the act of physically menacing a regular citizen in a manner that put that person in fear of imminent serious bodily injury would be a misdemeanor offense under § 2701(a)(3) but if the victim is a police officer performing an official duty, then the physically menacing behavior is a felony offense under § 2702(a)(6).

13

817 A.2d at 554. In Little, the Superior Court noted that the following behavior constituted a physical menace under § 2701(a)(3):

> In summary, we find that there was sufficient evidence to establish the elements of simple assault by physical menace since [defendant] erratically emerged from her home carrying a shotgun, shouting and advancing on her porch. In fear of imminent serious bodily injury, the deputies radioed for state police back-up. . . . Viewed in a light most favorable to the Commonwealth, we find that the evidence abbreviated here and more fully explained in the trial court opinion, is sufficient to prove the crime of simple assault by physical menace beyond a reasonable doubt.

Little, 614 A.2d at 1148.[8]

This case presents a similar scenario as Repko, except that Bentler was never able to actually get the rifle into a firing position prior to Cpl. Nederostak eliminating the threatened conduct. As in Repko, Bentler had no lawful intention when he continued to possess the rifle despite repeated commands to discard it nor did Bentler have a lawful intention when he stepped into the open area holding the rifle in both hands in a manner that was physically menacing. This case presents nearly an identical scenario as that presented in Little in that Bentler was pacing and moving in an agitated and aggressive manner, Bentler was demanding that the police disarm themselves while he refused to discard his weapon and Bentler stepped from behind the pickup truck into the open area in an aggressive manner while holding the rifle in both hands and attempting to raise it

---

[8] In a footnote, the Superior Court conceded that the defendant had never pointed or even raised the gun in any threatening manner:

> At trial, the Commonwealth and [the defendant] stipulated that during the incident [the defendant] was holding the gun "in the cradle," or in one arm, visible to onlookers. Although [the defendant] never pointed the gun at the deputies, we find that her overall behavior and actions were designed to, and did in fact, put the deputies in fear of imminent serious bodily injury.

Id. at 1148 n.2.

14

prior to getting shot.[9] As in Little and Repko, when viewing the evidence in a light most favorable to the Commonwealth, the evidence was sufficient for a jury to reasonably conclude that Bentler intended to, and did in fact, place each of the state troopers in fear of imminent serious bodily injury through physically menacing acts.[10]

---

[9] In Little, the defendant was merely cradling the shotgun and never held it with two hands in such a manner that it could be easily raised and fired. When Bentler stepped out from behind the truck, unlike the defendant in Little, he was holding the rifle with both hands in a manner in which it could easily be raised and fired.

[10] During oral argument, Bentler's counsel relied upon a number of decisions to support the position that there was insufficient evidence to support any inference that Bentler had the specific intent to place the three troopers in fear of imminent serious bodily injury through physically menacing behavior. See Commonwealth v. Matthew, 909 A.2d 1254 (Pa. 2006); Commonwealth v. Sheppard, 837 A.2d 555 (Pa. Super. 2003); Commonwealth v. Stumpo, 452 A.2d 809 (Pa. Super. 1982). The court has reviewed each of those decisions and finds them to be inapposite to the present case.

As to Matthews, the Pennsylvania Supreme Court considered the sufficiency of the evidence to sustain a conviction under § 2702(a)(1) based upon an attempt to cause serious bodily injury to another person. Thus, the question in Matthews was not whether the defendant had a specific intent to create a fear of imminent serious bodily injury through physical menace under § 2702(a)(6); rather, the question the Supreme Court considered was whether the defendant took a substantial step towards causing serious bodily injury to the victim and whether the defendant had the specific intent to cause such injury under § 2702(a)(1). Matthews, 909 A.2d at 1259. As it relates to this case, however, the Supreme Court reiterated that intent itself was "necessarily difficult to prove" and thus could be demonstrated by direct or circumstantial evidence. Id. at 1257. The holding in Matthews was followed by this court when it granted defendant's motion for judgment of acquittal at the time of trial on the three counts of attempted homicide. Outside of that context, Matthews does not negate Repko and Little.

As to Sheppard, the Superior Court upheld a conviction for aggravated assault on a police officer by physical menace under § 2702(a)(6) where the defendant had actually pointed his firearm at the police officer. Sheppard, 837 A.2d at 558. In that case, the defendant did not appeal the sufficiency of the evidence as to his menacing conduct, i.e., pointing a firearm at a police officer; rather, the defendant challenged the sufficiency of the evidence as it related to the defendant's knowledge that he was pointing a firearm at a police officer. Id. Bentler has not challenged the sufficiency of the evidence related to his knowledge that he was interacting with three state troopers. Sheppard simply has no applicability to the circumstances presented in this case nor does Sheppard contradict the holdings in Repko and Little.

As to Stumpo, the defendant was a police officer who physically assaulted a private citizen who had simply asked the defendant to provide identification proving that he was a police officer. In the course of the assault, the defendant threw the victim onto the hood of a patrol car. The defendant was also acting erratically and was unsteady on his feet. Based upon this evidence, the Superior Court determined that a jury could reasonably infer that the defendant intended to place the victim in fear of imminent serious bodily injury by physical menace. Stumpo, 452 A.2d at 815-16. Stumpo does not support Bentler's position that there was insufficient evidence as to his intent to cause fear of serious bodily injury by physical menace. If anything, Stumpo affirms the common law that Bentler's specific intent to cause such a fear could be inferred from his conduct. Thus, Stumpo likewise aligns with both Repko and Little.

15

## IV.    Conclusion

For the reasons set forth herein, Bentler's post-sentence motion for judgment of acquittal will be denied.

IN THE COURT OF COMMON PLEAS OF SUSQUEHANNA COUNTY

COMMONWEALTH OF PENNSYLVANIA          :

                      :

        v.                 : CP-58-0000277-2020

                      :

EDWARD LEE BENTLER          :

## DEFENDANT'S CONCISE STATEMENT
## OF ERRORS COMPLAINED OF ON APPEAL

Pursuant to the trial court's April 8, 2022, Order, defendant Edward Lee Bentler hereby submits his Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

1.    The trial court erred by allowing the charges to go to the jury and denying defendant's motions for judgment of acquittal for sufficiency of the evidence presented to the jury at trial as to the charges of aggravated assault, terroristic threats, and simple assault. The evidence presented by the Commonwealth was uncontradicted and insufficient as a matter of law to establish the elements of the crimes.

2.    The trial court erred by allowing the charge to go to the jury and denying a motion for judgment of acquittal for possession of a firearm by a person not to possess due to the Commonwealth's improper use of the criminal docket sheet to be used to prove the necessary element that Mr. Bentler had a prior enumerated conviction. The trial court erred by

allowing the Commonwealth to admit the exhibit at sidebar, outside of the eyes and ears of the jury, without laying a proper foundation, providing any testimony, or ever calling a witness to testify to the document. Furthermore, even if the Commonwealth had done all of the above, the document was allowed into evidence even though it was not the best evidence as the Commonwealth was in possession of the actual sentencing order for Mr. Bentler's prior conviction and failed to produce it or enter it into evidence at trial.

3.     The trial court erred by denying the defendant's post-verdict motions outlining the very specific details and case law supporting the motions that Mr. Bentler made to the Court and presented at the hearing for these motions, all of which were preserved at the trial and are the basis for this appeal.

Respectfully submitted,

Theron J. Solomon, Esq.
Tara G. Giarratano, Esq.
Dyller & Solomon, LLC
Gettysburg House
88 North Franklin Street
Wilkes-Barre, PA  18701
(570) 829-4860

## CERTIFICATE PURSUANT TO Pa.R.A.P. 2135(A)(1)

I certify that this brief contains 8,064 words in compliance

with the word count limit set by Pa.R.A.P. 2135(a)(1).

Theron J. Solomon
Attorney No. 319810

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than' non - confidential information and documents.

Theron J. Solomon
Attorney No. 319810

4