J-A28007-18

2019 PA Super 4

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
JONATHAN MICHAEL KLINE   :
  :
Appellant   :   No. 652 MDA 2018

Appeal from the Judgment of Sentence Entered February 14, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004891-2017

BEFORE: LAZARUS, J., OLSON, J., and MUSMANNO, J.

OPINION BY LAZARUS, J.:        **FILED: JANUARY 4, 2019**

Jonathan Michael Kline appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, after he was convicted by a jury of terroristic threats. After careful review, we affirm.

The trial court recited the relevant facts underlying the instant case as follows:

> The victim in the instant case testified that in months leading up to one specific incident[,] . . . [Kline,] who lived close by, on multiple occasions, would follow her up and down her long driveway before and after work, just staring at her. The victim added that, while [Kline] never left his property, his actions caused her to be on "[] heightened alert []" concerned as to what he might do next. Then on February 25, 2017, when she was returning home with her six (6) year old daughter, [Kline] ". . . stepped deliberately at my car, put his hands up like this [indicating] and went like this [indicating] to indicate he was firing a shot at us. Scared [us] to death." The victim said she went straight to the Pennsylvania State Police near her home to report the incident. She further added that her six (6) year old daughter was "[] scared to death[]" and begged her mother not to take her

home. The state trooper with whom the victim met upon arriving at the police station described her demeanor that day as follows:

> She was – I could describe her look as someone [who] was terrorized. She was mostly distraught. She had – her eyes were watering. Her face was red as if – you know she looked scared.

> [Kline] testified that he had no recollection of ever following the victim up her driveway and staring at her and, as to the events of February 25, 2017, and stated he pointed his finger at a vehicle that drove by and never thought much more about it.

Trial Court Opinion, 5/24/18, at 3-4 (internal citations to notes of testimony omitted).

After a one-day jury trial, Kline was charged with[1] and convicted of one count of terroristic threats; he was sentenced to 3-23 months' imprisonment, fined $500, and immediately paroled. Kline filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He presents one issue for our consideration: "Whether the jury verdict holding that [Kline's] gesture constituted a communication . . . was sufficient[2] to uphold the conviction of terroristic threat[s]." Appellant's Brief, at 4.

---

[1] The bill of information charges Kline with terroristic threats under two subsections of the statute, 18 Pa.C.S. § 2706(a)(1) & (a)(3). The sentencing order does not clarify under which subsection he was sentenced.

[2] When we review a claim challenging the sufficiency of the evidence, we apply the following standard:

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond

Kline argues that because his non-verbal gesture was not accompanied by any type of verbal communication, the evidence was insufficient to prove he had the intent to terrorize, a required element of the crime of terroristic threats. We disagree.

A person commits the crime of terroristic threats if the person "communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another." 18 Pa.C.S. § 2706(a)(1). "[T]he term 'communicates' means conveys in person or by written . . . means." 18 Pa.C.S. § 2706(e). Moreover, "[n]either the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime." **Commonwealth v. Fenton**, 750 A.2d 863, 865 (Pa. Super. 2000). "Rather, the harm sought to be prevented by the statute is the

---

a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Jannett**, 58 A.3d 818, 819-20 (Pa. Super. 2012) (citation omitted).

- 3 -

psychological distress that follows from an invasion of another's sense of personal security." ***Id.***

In ***Commonwealth v. Campbell***, 625 A.2d 1215 (Pa. Super. 1993), our Court emphasized the purpose behind the terroristic threats statute:

> The purpose of [section 2706] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience.  It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger.  18 Pa.C.S. § 2706, Official Comment - - 1972.  **The offense does not require that the accused intend to carry out the threat; it does require an intent to terrorize.**  The harm sought to be prevented is the psychological distress which follows from an invasion of another's sense of personal security.  Therefore, **it is the making of the threat with intent to terrorize that constitutes the crime.**

***Id.*** at 1218-19 (emphasis added) (citations and quotation marks omitted).

Instantly, the victim testified that on at least seven prior occasions Kline would stare at her, from his nearby property, with a "flat affect" and watch her and her family enter and exit the home.  N.T. Jury Trial & Sentencing, 2/14/18, at 17.  She also testified that Kline would make eye contact with her and keep staring at her until her family would finally enter their house.  These occurrences made the victim feel on edge, put her on "heightened alert," and made her wonder "[w]hat . . . he [was] going to do to [her children]." ***Id.*** at 18.  On the date of the alleged threatening incident, the victim testified that Kline stepped "deliberately at [her] car," put both hands up and made a gun-firing motion at her.  ***Id.*** at 20.  The victim testified that she was psychologically distressed at Kline's hand gesture.  Instead of retreating to

- 4 -

her home when Kline made the gesture, she continued to drive directly to the police station where Trooper Frank Ross testified that the victim "look[ed like] someone that was terrorized. She was mostly distraught. She had – her eyes were watering. Her face was red as if - - you know, she looked scared." N.T. Jury Trial & Sentencing, 2/14/18, at 42.

Kline, on the other hand, testified that on the date of the incident he was walking on his property and, as he saw a vehicle go by him, gestured with his thumb and pointer finger as a way to say, "hello, hey how are you doing?" to the person in the car. N.T. Jury Trial & Sentencing, 2/14/18, at 54. He specifically denied the victim's depiction of the hand gesture where she testified "he put his hands up . . . to indicate that he was firing a shot at [her]." *Id.* at 20. He also did not recall ever staring at the victim on prior occasions when she would walk to and from her home. *Id.* at 53.

This case boils down to a "he said, she said" scenario, where the testimony of the only eyewitnesses to the actual event, the defendant and victim, is completely contradictory. The jury, as the trier of fact, was permitted to believe all, part, or none of the evidence presented at trial. *Commonwealth v. Smith*, 146 A.2d 257, 262 (Pa. Super. 2016). With that precept in mind, we note that "this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." *Id.* at 261.

With regard to whether Kline's gesture constituted a communication, we take note that under section 2706, a communication may either be direct or

indirect and may be conveyed in person or by written means. While certain non-verbal gestures may not rise to the level of a communication as intended under section 2706, here, combining the menacing gesture of a shooting gun recoiling, while pointed at the victim, with Kline's past stalking-like behavior in relation to the victim, the jury could have concluded that he "conveyed" a threat to commit a crime of violence toward the victim.

Viewing the facts and circumstances of this case, in the light most favorable to the Commonwealth as verdict winner, the jury's verdict is supported in the record.[3] Here, the conviction is tied directly to the harm intended to be prevented under 2706 – namely, "the psychological distress that follows from an invasion of another's sense of personal security." **In re B.R.**, 732 A.2d 633, 636 (Pa. Super. 1999). Moreover, "facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence." **Id.** Rather, "the question of any doubt is for the trier of fact where the evidence is not so weak and

---

[3] We note that the trial judge incorrectly states in his Pa.R.A.P. 1925(a) opinion that "Appellant's intent to terrorize the victim is not required to prove the crime [of terroristic threats]." Trial Court Opinion, 5/24/18, at 5. This is simply wrong; intent to terrorize is an element of section 2706. **Campbell**, **supra**. However, because the jury was correctly instructed on the elements of the crime of terroristic threats, this post-conviction misstatement of the law is inconsequential to our appellate review. **See** N.T. Jury Trial & Sentencing, 2/14/18, at 63-64 (where trial judge instructed jury that "[t]o find a defendant guilty of this offense, you must find the following elements have been proven beyond a reasonable doubt. . . . [You must find t]hat the defendant communicated the threat to commit, in this case a crime of violence, assault or murder, with the intent to terrorize.").

inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id.* Unlike a "spur-of-the-moment" threat made during a period of "transitory anger,"[4] the victim testified that prior to the gun gesture incident that terrified her, on at least seven separate occasions, Kline would stare at her and her children "with a flat affect" as they entered and exited the car and house.

Accordingly, we find there was sufficient evidence to prove the intent to terrorize beyond a reasonable doubt. *Cf. Commonwealth v. Kidd*, 442 A.2d 826 (Pa. Super. 1982) (where defendant's principle intent was to insult police rather than cause public inconvenience or annoyance, Court vacated terroristic threats conviction; insufficient evidence of actual intent to terrorize or reckless disregard of risk of causing such terror where defendant's threats to arresting officers while he was drunk and handcuffed were spur-of- the-moment threats resulting from anger and were not type of threats intended to be punished under section 2706). *See Commonwealth v. Robinson*, 817 A.2d 1153, 1159 (Pa. Super. 2003) ("Intent . . . is a subjective element. [] Generally speaking, one is presumed to intend the normal consequences of one's action.").

Judgment of sentence affirmed.

Judge Musmanno joins this Opinion.

Judge Olson files a Concurring Opinion.

_____

[4] *Commonwealth v. Walls*, 144 A.3d 926, 937 (Pa. Super. 2016).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>01/04/2019</u>