J-S11018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARA AMANDA LEAVY | : | |
| | : | |
| Appellant | : | No. 731 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 5, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005169-2018

BEFORE:  NICHOLS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.: **FILED MARCH 13, 2020**

Mara Amanda Leavy (Appellant) appeals from the judgment of sentence imposed after the trial court convicted her of terroristic threats and resisting arrest.[1]  We affirm.

The trial court accurately detailed the evidence presented at trial as follows:

> [O]n April 16, 2018, [Appellant] was being discharged from the emergency department at UPMC Hospital. She was apparently displeased with being discharged and the charge nurse, Robyn Fabian, was asked to assist in getting [Appellant] to leave.  [Ms. Fabian] asked [Appellant] if she understood that she was discharged, and [Appellant] replied that she did but was "...not leaving until she was provided with a cab slip."  Ms. Fabian explained that the hospital could not provide her with one but said that she would permit [Appellant] to wait in the ER waiting room until busses began to run in a couple of hours.  She offered to provide her with a blanket, some food and obtain a ticket for the bus.  [Appellant]  responded with "profanities and aggressive

---

[1] 18 Pa.C.S.A. §§ 2706(a)(1) and 5104.

movements." This resulted in her being told that she could not wait in the ER because her conduct was affecting other patients and their families. Instead of leaving, [Appellant] returned to the waiting area. After Ms. Fabian told her that she had to leave, and as she was being escorted from the waiting room by UPMC police, she looked directly at Ms. Fabian and said: "Fuck you. You won't be talking shit when I come back and shoot you." Ms. Fabian testified that, based on her past experience with [Appellant], she considered her threat to be a "valid threat" and that it caused her to fear being physically assaulted as she walked to her car at the end of her shift.

Sean Kundrat testified that he was employed as a Police Sergeant for UPMC and was on duty during the early morning hours of April 16, 2018. He was called to a disturbance in the waiting room at about 2:10 a.m. and, upon arriving, observed [Appellant] at the registration desk, refusing Ms. Fabian's requests that she leave the waiting room. He intervened, telling [Appellant] that "hostile, belligerent and abusive language and behavior" were not permitted in the hospital. He reiterated that she was being asked to leave. When she ignored him, he asked her again to leave and told her she would be subject to arrest if she did not. [Appellant] then stood up, moved to his right and, looking back at Ms. Fabian, said: "Bitch won't be talking shit when I come back and shoot you."

Sgt. Kundrat determined that he would arrest [Appellant] for terroristic threats. When he advised her of this, she continued moving away from the officer. As he was attempting to handcuff her, she crashed through a sliding door, breaking it off its track and hinges. She continued resisting outside, breaking free before Sgt. Kundrat was able to grab her again and place both cuffs on her. Even after she was in custody and being escorted to the police office, handcuffed, she managed to reach Sgt. Kundrat's arms and scratch him.

[Appellant] also testified. Her descriptions of what happened that morning were markedly different than what the Commonwealth witnesses described. According to her, Ms. Fabian was being loud and belligerent, not her. When told that the hospital could not provide transportation, [Appellant] said that her and her boyfriend stopped in the ER waiting room where both were calling around to see if they could get rides. While sitting there, texting, she claimed that Sgt. Kundrat suddenly grabbed her arm.

She responded with some vulgarity, but, when he told her she had to leave, proceeded towards the door. She claims that as she approached the door, someone slammed into her, pushing her into the wall. She did not know who hit her. She said that she passed where Ms. Fabian was standing but said nothing to her. She was then grabbed again by the officer and slammed into the door. Once outside, she said she was told she was under arrest.

[Appellant's] boyfriend, Antone Williams also testified. He said that when he was sitting in the waiting room with [Appellant], "[T]he officer had come over and asked us to, you know - well, he was talking directly to [Appellant], asking her to leave." As they were leaving, he said that there was a verbal altercation between [Appellant] and the officer. He said a garbage can got knocked down and [Appellant] was pushed into the door by the officer. The officer then tried to handcuff [Appellant] and, when he did, took her into a side room. When asked if he heard [Appellant] threaten anyone, he said: "I could not hear the verbal altercation so, no, I cannot say for certain."

Trial Court Opinion, 7/30/19, at 2-5 (citations to notes of testimony and footnotes omitted).

After hearing this evidence, the trial court found Appellant guilty of terroristic threats and resisting arrest.[2] Appellant waived a pre-sentence investigation report, and on April 5, 2019, the trial court sentenced her to an aggregate five years of probation. Appellant filed a timely post-sentence motion which the trial court denied on April 22, 2019. On May 16, 2019, Appellant filed this appeal. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents two sufficiency issues for review:

_____

[2] The trial court granted Appellant's motion for acquittal on a charge of criminal mischief. See N.T., 4/4/19, at 84.

I.    WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN THE CONVICTION AT COUNT 1 – TERRORISTIC THREATS BECAUSE THE COMMONWEALTH DID NOT PROVE, BEYOND A REASONABLE DOUBT, THAT [APPELLANT] COMMUNICATED A THREAT TO FABIAN WITH THE INTENT TO TERRORIZE HER, AS OPPOSED TO MERE TRANSITORY ANGER?

II.   WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN THE CONVICTION FOR RESISTING ARREST AT COUNT 2 BECAUSE THE COMMONWEALTH DID NOT PROVE, BEYOND A REASONABLE DOUBT, THAT [APPELLANT] CREATED A SUBSTANTIAL RISK OF SERIOUS BODILY INJURY TO SERGEANT KUNDRAT, OR THAT ANY USE OF SUBSTANTIAL FORCE WAS JUSTIFIED?

Appellant's Brief at 5.

"We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

With regard to terroristic threats, we recently reiterated:

A person commits the crime of terroristic threats if the person "communicates, either directly or indirectly, a threat to ... commit any crime of violence with intent to terrorize another." 18 Pa.C.S. § 2706(a)(1). "[T]he term 'communicates' means conveys in

- 4 -

person or by written ... means." 18 Pa.C.S. § 2706(e). Moreover, "[n]either the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime." *Commonwealth v. Fenton*, 750 A.2d 863, 865 (Pa. Super. 2000). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *Id.*

*Commonwealth v. Kline*, 201 A.3d 1288, 1290, *appeal denied*, 216 A.3d 1038 (Pa. 2019).

Ms. Fabian testified that Appellant, with whom she had had "violent interactions with in the past, . . . most specifically . . . [said]: Fuck you. You won't be talking shit when I come back and shoot you." N.T., 4/4/19, at 14. In her brief, Appellant does not deny that she made the comment to Ms. Fabian. Rather, Appellant argues that the evidence was insufficient for the trial court to convict her of terroristic threats because her comment evidenced "mere transitory anger," and when she "called over her shoulder," her "spur-of-the-moment expression of frustration" was not a remark which "seriously impaired personal security." Appellant's Brief at 12, 22. Appellant emphasizes that she "did not intend to terrorize Fabian; her comments were mere transitory anger." *Id.* at 13. Appellant faults the trial court for "failing to acknowledge in its opinion that mere expressions of transitory frustration or anger are insufficient to sustain a conviction for Terroristic Threats." *Id.* at 15. We are not persuaded by Appellant's argument.

The trial court sat as the factfinder at Appellant's bench trial. At the conclusion of trial, the court expressly addressed the element of intent, stating:

> The interesting thing about the terroristic threat, and that's why it's so rarely used when it comes to police officers, is, frankly, because it's the intent of the defendant to terrorize. And often times things like that are said to police officers, and they slough them off because it didn't terrorize them at all because they knew they had the upper hand.
>
> It doesn't make it any less the intent of the defendant to place someone, who may or may not even be capable of being afraid of her. That's the law.

N.T., 4/4/19, at 87-88.

The following day, the trial court reconvened to announce its verdict and stated that it "carefully listened to the evidence . . . and I find the best testimony is of the victim and the police officer involved here [and] of the highest credibility." N.T., 4/5/19, at 2. The court then announced its determination that Appellant was guilty of terroristic threats. *Id.* As the factfinder, the trial court did not abuse its discretion by inferring that Appellant possessed the intent to terrorize Ms. Fabian. This Court has explained that intent may be shown by circumstantial evidence. ***Commonwealth v. Pasley***, 743 A.2d 521, 524 (Pa. Super. 1999), *citing* ***Commonwealth v. Chance***, 458 A.2d 1371 (Pa. Super. 1983) (holding that specific intent may be inferred from the words or the actions of the defendant in light of all attendant circumstances). Appellant's first issue lacks merit.

In her second issue, Appellant argues that the evidence was insufficient to support her conviction of resisting arrest because she "did not place Sergeant Kundrat at risk of serious bodily injury, and if the officer used substantial force, it was not justified." Appellant's Brief at 23. Appellant claims she only "pulled her hands away and rushed out of a door." *Id.* at 24. Appellant states that she "merely attempted to escape from Sergeant Kundrat for about 45 seconds, and made no significant assertion of physical force against him." *Id.* at 23.

A person is guilty of resisting arrest if "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. § 5104. This Court has held that even passive resistance that requires the use of substantial force is sufficient to sustain a conviction for resisting arrest. *See*, *e.g.*, *Commonwealth v. McDonald*, 17 A.3d 1282, 1286 (Pa. Super. 2011) (sustaining conviction where defendant refused to comply with police when they attempted to handcuff him, and police officers tased him after threatening to taser him if he did not comply); *See also Commonwealth v. Thompson*, 922 A.2d 926, 928 (Pa. Super. 2007). However, "minor scuffling which occasionally takes place during an arrest" is not sufficient to establish resisting arrest. 18

Pa.C.S.A. § 5104 cmt. **See Commonwealth v. Rainey**, 426 A.2d 1148, 1150 (Pa. Super. 1981).

Appellant emphasizes that she "merely attempted to escape from Sergeant Kundrat for about 45 seconds" and made no "dangerous or violent actions towards Sergeant Kundrat." Appellant's Brief at 23, 25. She concedes that she "may have exited the door in an aggressive manner," but states that she "was a few steps ahead of Sergeant Kundrat at this time, so it cannot be said that he was in danger of being hit by the door." **Id.** at 24-25. However, the trial court found otherwise, stating:

> Sgt. Kundrat's testimony was that once he advised [Appellant] that she was under arrest, she resisted. Her resistance used enough force to knock a sliding door off of its hinges as she pushed through it. **This resistance certainly required substantial force to overcome it and created a substantial risk of bodily injury to Sgt. Kundrat**. Her continued resistance outside as he tried to bring her under control also established that she was resisting with enough force to require substantially more force to subdue her. The fact that the officer apparently suffered no injury is of no moment. Her conduct placed him at substantial risk for injury and that is sufficient to support the verdict of guilty at this count.

Trial Court Opinion, 7/30/19, at 7-8 (emphasis added).

Our review supports this conclusion. Sergeant Kundrat testified that when he advised Appellant that he would be placing her under arrest, she "proceeded straight through the three-partitioned door. And when I say straight through, she proceeded through and broke it off its hinges." N.T., 4/4/19, at 35. The sergeant described the door as "glass and steel-aluminum . . . approximately 12 feet long. . . . It's a solid piece of door." **Id.** at 36. He

added, "[u]pon inspection by our maintenance department, they found the bolts that held the door up were actually sheared off." *Id.* Sergeant Kundrat testified that he followed Appellant 20 to 25 feet, until he was "able to pin" her against a wall and apply handcuffs. *Id.* at 37-38. He stated:

> There was a significant amount of force that was again, reasonable – reasonable force used, obviously. At that point she had broken free of my control at least two times and gone through a solid portioned door. . . . After we had actually broken through the door together, she had ripped her arm away from me. . . . Two additional officers arrived at the scene to assist me. We began to escort [Appellant] to our back office for processing. . . . En route back to our office, another sergeant and I were escorting her, [Appellant] kept trying – kept attempting to pinch our hands and our arms. And I actually got - . . . She actually was able to reach her hand up around and scratch the top of my hand.

N.T., 4/4/19, at 38-39.

Although the encounter only lasted 45 seconds, on this record, and viewing the evidence in a light most favorable to the Commonwealth, we find no error in the trial court's determination that Appellant resisted arrest by preventing Sergeant Kundrat from effecting the arrest, and creating a substantial risk of bodily injury to Sergeant Kundrat "or anyone else" by breaking down the hospital door, and causing the officer to use substantial force to arrest Appellant. *See* 18 Pa.C.S.A. § 5104. Thus, Appellant's second issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/13/2020