J-A03040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:             PENNSYLVANIA
:
v.                                    :
:
:
:
ANGEL ONEILL SANTIAGO            :
:
Appellant             :    No. 970 EDA 2024

Appeal from the Judgment of Sentence Entered March 15, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000317-2024

BEFORE:    STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED MARCH 12, 2025**

Angel Oneill Santiago ("Santiago") appeals from the judgment of
sentence imposed following his non-jury trial conviction of terroristic threats.[1]
We affirm.

On the evening of December 5, 2023, Philadelphia Police Officer
Jonathan McGowan ("Officer McGowan") and his partner, Officer Walker,[2]
were on routine patrol.  Both officers were on bicycles in the area around
Kensington Avenue and Monmouth Street, which Officer McGowan described
as having "a very high amount of foot traffic[,] unsheltered individuals dealing

_____

[1] 18 Pa.C.S.A. § 2706(a)(1).

[2] While the suppression hearing transcript does not indicate Officer Walker's
first name, a motion to quash, filed by Santiago, referred to him as Officer
Anthony Walker.  *See* Motion to Quash, 3/14/24, at 2.

with mental health problems[,] and very high . . . crime with firearms and narcotics trafficking." N.T., 3/15/24.

The trial court summarized Officer McGowan's relevant testimony as follows. Officer McGowan encountered Santiago on the street. Santiago appeared to be "stuffing something into his front waistband," possibly a firearm, "upon making eye contact with" the officers. Trial Court Opinion, 5/23/24, at 3 (record citations omitted). Officer McGowan approached Santiago to talk to him and activated his body-worn camera.

> Once the body worn camera [was] activated there [was] a buffer period of [sixty] seconds during which audio [was] not recorded.
>
> Upon [the officers] approaching [Santiago] within five feet, [Santiago] began yelling [multiple times,] "I . . . have a gun on me. Yea I do[,"] and that he . . . would blast [the officers.] Officer McGowan did not have his gun or taser drawn. [T]here was another man standing by [Santiago, who] began walking away after the officers started interacting with [Santiago] and ultimately left the scene. At no time did either Officer McGowan or Walker attempt to stop that man.
>
> [Santiago] next "attempted to run for approximately two seconds but then stopped." [The body worn camera video] show[ed] that while [Santiago] briefly ran from [the o]fficers, they remained on their bicycles and did not chase. [Santiago] stopped, turned around and reapproached Officers McGowan and Walker. [Santiago] continued to scream that he had a gun on him, while his arms were extended towards the officers.
>
> At this point, Officer Walker and Officer McGowan [detained Santiago] for "safety purposes to figure out if [he had] a firearm on him, because he [said] he did. [The officers] asked him if he had a permit and he said no."

*Id*. at 3-4 (unnecessary capitalization and record citations omitted and paragraph breaks added). Santiago did not, in fact, have a gun on his person.

The Commonwealth introduced the video recorded by Officer McGowan's body worn camera. The video depicted Santiago yelling, "'I'll blast one of those [n-words ]' as he was reapproaching both officers." *Id*. at 5. Officer McGowan testified that Santiago's threats and tone of voice on the video were "the same . . . as [they were] during the unrecorded portion of their initial interaction." *Id*. When the officers detained Santiago for further investigation, Santiago "continued to say . . . he would 'blast' them." *Id*.

Relevant to Santiago's argument on appeal, he avers the video also showed him say, "Y'all be harassing me all day," and "You've been doing this with me all day." Santiago's Brief at 9.

The Commonwealth charged Santiago with terroristic threats and related offenses.[3] Santiago filed a motion to suppress evidence. The trial court conducted a hearing on March 15, 2024, at which the Commonwealth presented the above evidence. The trial court denied suppression, and this matter proceeded immediately to a non-jury trial. The Commonwealth moved into evidence all of the non-hearsay evidence from the suppression hearing. Additionally, the parties stipulated that if Santiago's mother were to testify, she would state that Santiago had a reputation in the community for being peaceful and law-abiding. *See* N.T., 3/15/24, at 70.

---

[3] The Commonwealth also charged Santiago with simple assault and aggravated assault. Following the close of the Commonwealth's evidence, Santiago moved for a judgment on acquittal on all charges. The trial court granted this motion as to simple assault and aggravated assault.

Santiago did not testify in his defense. In closing argument, he acknowledged he was "perhaps disrespectful" and "should . . . have conducted himself in a different manner." *Id*. at 76. However, he argued he made the statements "in spur of the moment[,] transitory anger," which the terroristic threats statute did not intend to criminalize. *Id*. at 71. Relevantly, Santiago relied on *Commonwealth v. Walls*, 144 A.3d 926 (Pa. Super 2016), and *Commonwealth v. Sullivan*, 409 A.2d 888 (Pa. Super. 1979) (both cases discussed *infra*). The Commonwealth responded that the facts of those cases were distinguishable from those in this case.

The trial court found Santiago guilty of terroristic threats. This matter then proceeded immediately to sentencing. The court considered that Santiago was incarcerated for two months before paying bail and imposed a sentence of no further penalty. Santiago did not file a post-sentence motion, but filed a timely notice of appeal. Both he and the trial court have complied with Pa.R.A.P. 1925.

Santiago presents one issue for our review:

Was the evidence insufficient to sustain the guilty verdict on terroristic threats, where the prosecution did not prove beyond a reasonable doubt that . . . Santiago had a specific intent to terrorize another, and especially where the statements at issue arose in the context of "an unplanned, heated confrontation" resulting in "a spur-of-the moment threat made during a period of transitory anger?"

Santiago's Brief at 2.

Santiago avers the evidence was insufficient to prove he "harbored a settled intent to terrorize another, and [instead] he uttered the spur-of-the-moment threat in a moment of transitory anger and during an unplanned, heated confrontation." *Id*. at 13 (unnecessary capitalization omitted).

We consider the applicable standard of review:

> "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." "When reviewing the sufficiency of the evidence, this Court is tasked with determining whether the evidence at trial, and all reasonable inferences derived therefrom, are sufficient to establish all elements of the offense beyond a reasonable doubt when viewed in the light most favorable to the Commonwealth[.]" . . .

*Commonwealth v. Walls*, 144 A.3d 926, 931 (Pa. Super. 2016).

> In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.
>
> Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Kline*, 201 A.3d 1288, 1289 n.2 (Pa. Super. 2019) (citation omitted and paragraph break added).

- 5 -

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). Thus, "the Commonwealth must prove that the defendant 1) made a threat to commit a crime of violence and 2) the threat was communicated with the intent to terrorize another." **Commonwealth v. Campbell**, 253 A.3d 346, 348 (Pa. Super. 2021).

The comment to the terroristic threats statute provides: "The purpose of [this] section is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." 18 Pa.C.S.A. § 2706, *comment*. "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." **Commonwealth v. Beasley**, 138 A.3d 39, 46 (Pa. Super. 2016) (citation omitted). "[T]he harm sought to be prevented is the psychological distress that follows from an invasion of another's sense of personal security." **Kline**, 201 A.3d at 1290 (citation omitted). "However, 'being angry does not render a person incapable of forming the intent to terrorize.'" **Commonwealth v. Reynolds**, 835 A.2d 720, 730 (Pa. Super. 2003).

While "[t]he offense does not require that the accused intend to carry out the threat, it does require an intent to terrorize. . . . It is the making of

the threat with intent to terrorize that constitutes the crime." *Kline*, 201 A.3d at 1290 (emphases omitted). The court "must consider the totality of circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation." *Reynolds*, 835 A.2d at 730 (citation omitted).

In *Sullivan*, the defendant called the state police barracks, complained that the local county sheriff harassed his father earlier that day, "and demanded that a state police officer be sent at once to his home." *Sullivan*, 409 A.2d at 888. "A trooper was . . . dispatched to investigate," but before he arrived, the defendant called the barracks again and, referring to the county sheriff, said, "If you don't want to send anybody down here, I have a .30-30 rifle and I'll come up there and blow that son of a bitch's head off." *Id*. at 888–89. The next day, the defendant had a chance encounter with the county sheriff. *See id.* at 889. During the ensuing argument, the defendant threatened to kill the sheriff. *See id*. The defendant "was convicted of two counts of terroristic threats" and appealed. *Id*. at 888.

This Court vacated the defendant's judgment of sentence. *Id*. at 890. With respect to the first threat on the telephone, this Court held the evidence was insufficient to show the defendant had the requisite intent, because there was no evidence the defendant "had any intention of carrying out the threat." *Id*. at 889. This Court also held that the second threat, during the encounter with the sheriff, "was the emotional product of a chance meeting with the sheriff," and similarly, there was no evidence the defendant made the threat

"with any intention of carrying it out." *Id*. (unnecessary capitalization omitted).

In *Walls*, a prosecutor was shopping at a mall when the defendant shouted at her that she was responsible for his wrongful conviction, and blamed her for his grandmother's death while he was in prison. *See Walls*, 144 A.3d at 930. The defendant came within one foot of the prosecutor and threw his hat. *See id*. The prosecutor "stepped back and told [him] to get away from her." *Id*. While being escorted away, the defendant continued to shout "that she caused his grandmother's death and that she should be next." *Id*. Following a non-jury trial, the trial court found the defendant guilty of, *inter alia*, terroristic threats.

On appeal, this Court concluded the evidence was insufficient to sustain the terroristic threats conviction, as the defendant did not act with the necessary intent. *See id*. at 938. This Court considered the facts of *Sullivan*, where "the defendant encountered an official in public, a heated confrontation followed, and the defendant made a threat during that heated confrontation." *Id*. at 937. The *Walls* Court similarly held that in the case before it, the defendant "became enraged upon seeing the individual he (mistakenly) blamed for sending him to prison. This type of spur-of-the-moment threat, resulting from transitory anger, [was] not covered by the terroristic threats statute." *Id*.

In this appeal, Santiago argues the evidence was insufficient to show he had a settled intent to terrorize the officers. He maintains that like *Walls* and *Sullivan*, the Commonwealth's evidence only showed he "unexpectedly came across law enforcement in public, which instilled in him spontaneous anger." Santiago's Brief at 17. Santiago maintains that police officers had "been harassing him all day" and his "merely idle threat to 'blast' [the] officers was the emotional product of their heated confrontation." *Id*. at 17, 19. Santiago also argues that the officers' lack of fear, as well as the bystander's leaving casually, was relevant to show he had no intention to terrorize them. Finally, Santiago contends that because Officer McGowan's body camera had not properly recorded all the audio of the interaction, the trial court could not assess what his intent was. Santiago concludes this Court should reverse his terroristic threats conviction.

In its opinion, the trial court first concluded that this case was distinguishable from *Walls* because Santiago "did not make his threats while being escorted or walking away," nor make "a general statement of harm towards [the] officers." Trial Court Opinion, 5/28/24, at 20. Instead, the court found that Santiago "made a direct specified threat to shoot officers with a firearm he was claiming to possess in that moment." *Id*. Additionally, unlike the defendant in *Walls*, Santiago made *additional* threats after he jogged away and reapproached the officers a few seconds later.

Furthermore, the trial court concluded this case was distinguishable from **Sullivan**, because "not only did [the] arresting officers have a suspicion [that Santiago] may have been attempting to conceal a firearm . . . , but [Santiago] additionally announced he possessed a firearm in that moment indicating he could carry out an act of violence and he would use it to specifically 'blast', [or] shoot, the arresting officers, a threat with clear implications." *Id*. at 21.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude the record supports Santiago's terroristic threats conviction. **See Walls**, 144 A.3d at 931. Our review of the record reveals the Commonwealth presented sufficient evidence to support a conclusion that Santiago possessed the necessary intent to commit terroristic threats. Despite Santiago's characterization of his actions as "spur of the moment threats," testimony from Officer McGowan — which the trial court credited — showed there was no argument between the officers and Santiago. **See generally** N.T., 3/15/24, at 4–30. Instead, the officers merely approached Santiago after he appeared to be "stuffing something," possibly a firearm, "into his front waistband upon making eye contact with" the officers. Trial Court Opinion, 5/23/24, at 3. Even after Santiago yelled that he had a gun and would "blast" them and left, the officers remained on their bicycles, did not draw their weapons, and did not give chase. **Id**. Nevertheless, Santiago turned around, returned, and continued to scream that he had a gun,

with his arms extended toward the officers. After this threat, the officers detained Santiago for safety purposes, and yet he continued to say he would "blast" the officers. *Id*.

Furthermore, we conclude no relief is due on Santiago's claim that Officer McGowan's delayed turning on his body worn camera. Santiago contends that had the initial audio been captured, then the trial court would have seen he was acting sarcastically out of frustration, which would have disproved intent. Santiago's Brief at 8. However, Santiago ignores that Officer McGowan testified that "the threats heard [on the video] were identical to the threats [Santiago] made before the audio began in the video." Trial Court Opinion, 5/23/24, at 5. Importantly, the trial court credited this testimony, and we may not reweigh this credibility finding. *See Kline*, 201 A.3d at 1289 n.2.

Finally, no relief is due on Santiago's remaining arguments — that the officers were not fearful for their lives and he could not act on his threat because he did not possess a gun. As stated above, "[n]either the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." *Beasley*, 138 A.3d at 46. It was within the province of the trial court, as finder of fact, to weigh this evidence — that the officers took no action to defend themselves and that Santiago did not in fact possess a gun. *See Kline*, 201 A.3d at 1289 n.2.

For the foregoing reasons, we conclude that no relief is due on Santiago's sufficiency of the evidence claim. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/12/2025