**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
  :
v.   :
  :
  :
  :
DEYLER MANUEL MARTINEZ-BAEZ   :
  :
Appellant   :   No. 1321 MDA 2024

Appeal from the Judgment of Sentence Entered July 10, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003872-2023

BEFORE: OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:       **FILED: JULY 14, 2025**

Deyler Manuel Martinez-Baez ("Martinez-Baez") appeals from the judgment of sentence imposed following his convictions for terroristic threats and simple assault.[1] Additionally, Martinez-Baez's court-appointed appellate counsel, William Bispels, Esquire ("Attorney Bispels"), has filed a petition to withdraw from representation and a brief styled pursuant to **Anders v. California**, 386 U.S. 738 (1967). We grant Attorney Bispels' petition and affirm the judgment of sentence.

We glean the following factual history from the evidence and testimony presented at trial. In 2023, Luis Lopez-Nunez ("Lopez-Nunez") was assisting his pregnant niece, Samantha Stephany Cuto-Guerrero ("Cuto-Guerrero"), move out of the apartment she shared with her partner, Martinez-Baez, after he beat her the day prior to the extent that she needed to receive treatment

---

[1] **See** 18 Pa.C.S.A. §§ 2706(a)(1), 2701(a)(3).

at the hospital. After approximately thirty minutes, Martinez-Baez arrived at the home, complaining that one of the items Cuto-Guerrero was taking was his. Following a minor disagreement between Martinez-Baez and Cuto-Guerrero, Lopez-Nunez told Martinez-Baez to take his property. Instead of doing so, however, Martinez-Baez continued to raise his voice, move "from side to side like he was nervous[,]" and started "moving around the gun" he had concealed under his sweatshirt. N.T., 6/5/24, at 9. When Lopez-Nunez told Martinez-Baez to lower his voice, Martinez-Baez threatened to hit Lopez-Nunez in the head with the butt of the concealed gun, before subsequently pulling the gun out and pointing it at Lopez-Nunez from approximately five to six feet away. In an attempt to defend himself, Lopez-Nunez picked up a nearby shovel.

At this point, Cuto-Guerrero stepped in front of Lopez-Nunez, and told Martinez-Baez not to shoot. Lopez-Nunez then announced that he was going to call the police. Martinez-Baez continued to point his gun at Lopez-Nunez, through Cuto-Guerrero, and threatened to shoot Lopez-Nunez if he did so. Although Lopez-Nunez "felt fear for [his] family because [he has] children[,]" he called the police, nonetheless. *Id*. at 12. After waiting approximately ten to fifteen minutes without any police response, and with the gun still aimed at him and Cuto-Guerrero, Lopez-Nunez decided to leave the residence. As he did so, Martinez-Baez clarified that "he knew where [Lopez-Nunez] lived[, that] he was going to kill [Lopez-Nunez, and] that he was the owner of

- 2 -

Reading and he had [the city] under control." *Id*. at 11, 14.  Cuto-Guerrero finished moving out soon thereafter.

Later that day, Lopez-Nunez and Cuto-Guerrero traveled to city hall, whereupon they spoke to the police and filed a complaint before returning back to Lopez-Nunez's home.  Not long after, two investigating officers arrived at the home, taking a statement from Lopez-Nunez with assistance from Cuto-Guerrero and her aunt.  Notably, Cuto-Guerrero did not dispute any of Lopez-Nunez's statements to police, including his narration of the above events.  *See id*. at 39.  Following this conversation, the officers recommended that Cuto-Guerrero seek a protection from abuse order, which she obtained that same day.

Police arrested Martinez-Baez and charged him with terroristic threats, simple assault, and harassment.  With the assistance of private counsel, Martinez-Baez proceeded to a bench trial, at which the Commonwealth presented the testimony of Lopez-Nunez and one of the investigating officers. Martinez-Baez did not testify in his defense.  However, he presented the testimony of Cuto-Guerrero, who testified that: (1) she was back together with Martinez-Baez and living with him and their newborn child; (2) she never saw Martinez-Baez with a gun, nor had she ever seen him with one; and (3) she never heard him say that he was going to shoot or kill Lopez-Nunez or anyone else.  Additionally, Cuto-Guerrero testified that although she did not previously dispute any of Lopez-Nunez's statements to police, she chose not to do so only because she was staying with him and her aunt at the time and

felt like she "had to go along with what [her] family was saying." ***Id***. Thus, she clarified that while she did respond to the two officers' direct questions, she did not otherwise participate or necessarily agree with what her uncle was saying. Cuto-Guerrero did not otherwise clarify why she thereafter obtained the protection from abuse order.

At the conclusion of trial, the trial court convicted Martinez-Baez of terroristic threats and simple assault, and acquitted him of the harassment charge. On July 10, 2024, the trial court imposed an aggregate sentence of two years' probation, with the additional requirement that Martinez-Baez have no contact with Lopez-Nunez or any member of his family — with the exception of Cuto-Guerrero. After retaining new private counsel, Martinez-Baez filed a post-sentence motion arguing that the verdict was against the weight of the evidence.[2] The trial court denied the motion. Martinez-Baez

---

[2] Martinez-Baez did not initially file a timely post-sentence motion. ***See Commonwealth v. Dreves***, 839 A.2d 1122, 1128-29 (Pa. Super. 2003) (*en banc*) (explaining that pursuant to Pa.R.Crim.P. 720, a defendant may file a post-sentence motion no later than 10 days after imposition of sentence, and that a timely post-sentence motion tolls the appeal period, whereas an untimely motion does not). However, he petitioned the trial court within thirty days of sentencing to reinstate his post-sentence motion rights *nunc pro tunc*. As the trial court expressly granted the petition within this same thirty-day period, we determine that Martinez-Baez's instant post-sentence motion, filed within the time allotted by the trial court in its order granting relief, is timely such that it tolled the appeal period. ***See Commonwealth v. Capaldi***, 112 A.3d 1242 (Pa. Super. 2015) (instructing that a post-sentence motion filed *nunc pro tunc* may toll the appeal period, but only if the following two conditions are met: (1) the defendant files a separate and distinct request to file a post-sentence motion *nunc pro tunc* within thirty days of sentencing; and (2) the trial court expressly permits the filing of a post-sentence motion *nunc pro tunc*, also within thirty days of sentencing).

filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Prior to submitting an appellate brief, Martinez-Baez's privately-retained counsel filed an application to withdraw from representation, which the trial court granted. As a result, Martinez-Baez applied for the appointment of appellate counsel through the public defender's office, which ultimately appointed Attorney Bispels for the remainder of the instant appeal. In lieu of filing an appellate brief, however, Attorney Bispels filed a petition to withdraw and an **Anders** brief. Martinez-Baez did not respond to the petition or the **Anders** brief.

Before we may address the merits of the issues raised in the **Anders** brief, we must first assess the petition to withdraw from representation to determine whether it meets certain procedural requirements. **See Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). An **Anders** brief that accompanies a request to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). Counsel must also provide a copy of the **Anders** brief to the client, and a letter that advises the client of the right to "(1) retain new counsel to pursue the appeal; (2)

- 5 -

proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the ***Anders*** brief." ***Commonwealth v. Orellana***, 86 A.3d 877, 880 (Pa. Super. 2014) (citation omitted). If counsel has satisfied these requirements, we then conduct "a full examination" of the record "to decide whether the case is wholly frivolous." ***Commonwealth v. Dempster***, 187 A.3d 266, 271 (Pa. Super. 2018) (*en banc*) (quoting ***Anders***, 386 U.S. at 744).

Here, in the ***Anders*** brief, Attorney Bispels provided a procedural and factual history of the case with citations to the record, discussed the issues arguably supporting the appeal, and explained why he concluded that they were frivolous. ***See Anders*** Brief at 7-16. Attorney Bispels also mailed a copy of the ***Anders*** brief to Martinez-Baez, and in his cover letter advised him that he could raise any additional issues before this Court *pro se* or with private counsel. ***See*** Petition to Withdraw, 3/24/25, at unnumbered 2. As Attorney Bispels has substantially complied with the requirements of ***Anders*** and ***Santiago***, we will conduct an independent review to determine whether the appeal is frivolous.

In the ***Anders*** brief, Attorney Bispels identifies the following issues for our review:

1. Whether the evidence at trial was sufficient to support verdicts of guilty of simple assault and terroristic threats.

2. Whether the verdicts of guilty of simple assault and terroristic threats were against the weight of the evidence.

***Anders*** Brief at 7 (unnecessary capitalization omitted).

The first issue that Attorney Bispels identifies in the **Anders** brief presents a challenge to the sufficiency of the evidence supporting Martinez-Baez's convictions for simple assault and terroristic threats. A challenge to the sufficiency of the evidence presents a question of law for which our standard of review is *de novo*, and our scope of review is plenary. **See Commonwealth v. Johnson**, 236 A.3d 1141, 1152 (Pa. Super. 2020) (*en banc*). When considering a challenge to the sufficiency of the evidence:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

**Commonwealth v. Franklin**, 69 A.3d 719, 722-23 (Pa. Super. 2013) (quotations marks, brackets, and citations omitted). Importantly, "the trier of fact while passing upon the credibility of witnesses and the weight of the

evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa. Super. 2011) (*en banc*) (citations and brackets omitted).

"A person commits the crime of terroristic threats if [he] communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1); *see also Commonwealth v. Kline*, 201 A.3d 1288, 1293 (Pa. Super. 2019) (finding evidence was sufficient to establish that defendant communicated a threat to commit a crime of violence with intent to terrorize the victim via a non-verbal "gesture of a shooting gun recoiling," in satisfaction of the terroristic threats statute).

A person commits the crime of simple assault pursuant to section 2701(a)(3) when he "attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa.C.S.A. § 2701(a)(3). As this Court has explained:

> [T]he act of pointing a gun at another person [can] constitute simple assault as an attempt by physical menace to put another in fear of imminent serious bodily injury. . . . The elements which must be proven are intentionally placing another in fear of imminent serious bodily injury through the use of menacing or frightening activity. [Furthermore, i]ntent can be proven by circumstantial evidence and may be inferred from the defendant's conduct under the attendant circumstances.

*Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa. Super. 2003) (citation omitted).

- 8 -

In the **Anders** brief, Attorney Bispels summarized Martinez-Baez's sufficiency arguments and ultimately determined that they were without merit. In doing so, Attorney Bispels emphasized that "[t]he trial court, sitting as factfinder, determined that . . . [Martinez-Baez] had committed the crimes of simple assault and terroristic threats by pointing a gun at [Lopez-Nunez] and threatening to kill him." **Anders** Brief at 15 (unnecessary capitalization omitted). As such, Attorney Bispels concluded that "[w]hile [Martinez-Baez] may disagree with the verdicts, [this disagreement] is not equivalent to demonstrating reversible error, which [Martinez-Baez] has [otherwise] failed to do." **Id**. at 16.

The trial court considered Martinez-Baez's sufficiency claims and determined that they had no merit, reasoning as follows:

> For the crime of terroristic threats, the Commonwealth must prove that [Martinez-Baez] communicated, either directly or indirectly, a threat to commit a crime of violence with the intent to terrorize another. . . . Lopez-Nunez testified that [Martinez-Baez] threatened to kill him if he called the police. He also testified that [Martinez-Baez] threatened to strike him with the butt of the gun. For the crime of simple assault by physical menace, the Commonwealth must prove that [Martinez-Baez] attempted to put the intended victim in fear of imminent serious bodily injury. The testimony that [Martinez-Baez] would kill . . . Lopez-Nunez, made while [Martinez-Baez] was holding a gun, certainly fulfills the requirements of the statute.
>
> This court was sitting as the finder of fact in this matter and found . . . Lopez-Nunez credible. Witness credibility and the weight to be accorded [to] the evidence produced are matters within the province of the trier of fact, who is free to believe all, some or none of the evidence. The defense established that no evidence of the 911 call was presented and that the police did not respond until several hours later. The defense further highlighted

> potential inconsistencies in . . . Lopez-Nunez's testimony about from where [Martinez-Baez] obtained the gun[,] noting that in the police report he indicated it was retrieved from his car while his in-court testimony was that it came from [Martinez-Baez's] sweatshirt. However, as evidenced by the verdicts, these arguments were not persuasive to this court, as the finder of fact. When viewed in the light most favorable to the Commonwealth, there is sufficient evidence to support the verdict rendered.

Trial Court Opinion, 11/13/24, at 2-3 (citation and unnecessary capitalization omitted).

After reviewing the record and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we similarly determine that the Commonwealth's evidence was sufficient to convict Martinez-Baez of both terroristic threats and simple assault. As it relates to his conviction for terroristic threats, we highlight that the Commonwealth presented testimony that established that: (1) Lopez-Nunez knew that Martinez-Baez was holding onto a concealed gun when Martinez-Baez threatened to hit him in the head with its butt; (2) Martinez-Baez thereafter threatened to shoot Lopez-Nunez while pointing the same gun at him from approximately five to six feet away; and (3) Martinez-Baez threatened that he was going to kill Lopez-Nunez for speaking to the police, again pointing the gun at Lopez-Nunez and additionally implicating that Lopez-Nunez was not safe anywhere in the city, including Lopez-Nunez's family home. As a result of these threats, Lopez-Nunez testified that he feared for his family, as he has children. On this record, the Commonwealth's evidence is clearly sufficient to support Martinez-Baez's conviction for terroristic threats beyond a reasonable doubt, as Martinez-Baez

issued multiple threats to commit a crime of violence with the intent to terrorize Lopez-Nunez. *See* 18 Pa.C.S.A. § 2706(a)(1); *see also Kline*, 201 A.3d at 1293.

We note that this evidence is similarly sufficient to support Martinez-Baez's conviction of simple assault, as Martinez-Baez's menacing act of pointing a gun at Lopez-Nunez in close proximity and verbally threatening his life genuinely placed Lopez-Nunez in a state of fear that Martinez-Baez would imminently follow through on these threats and cause him serious bodily injury. *See* 18 Pa.C.S.A. § 2701(a)(3); *see also Reynolds*, 835 A.2d at 727 (holding that appellant's conduct of pointing a gun at the victims and threatening their lives evidenced his intent to place them "in fear of imminent serious bodily injury through the use of menacing or frightening activity"). Accordingly, because we determine that the Commonwealth's evidence was sufficient to prove the charges of terroristic threats and simple assault beyond a reasonable doubt, we conclude that Martinez-Baez's first issue is without merit.

The second issue that Attorney Bispels identifies in the *Anders* brief presents a challenge to the weight of the evidence. As our Supreme Court has explained:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion

of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations and footnote omitted). "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (brackets and citation omitted). Thus, in order for a defendant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court." *Id*. at 546 (citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of

- 12 -

the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted, emphasis in original).

In the *Anders* brief, Attorney Bispels relayed that the "gist of [Martinez-Baez's weight of the evidence] argument is that [Lopez-Nunez's] testimony at [t]rial was inconsistent with the statement he had given to police on the day of the incident." *Anders* Brief at 13. Specifically, Martinez-Baez identified the following inconsistencies: (1) Lopez-Nunez testified he had called 911 soon after the incident, but the responding officer "testified that he began work at 7:00 P.M. and was unaware of a 911 call being placed earlier in the day[;]" (2) although the responding officer testified that Lopez-Nunez "had told him that the gun in question was retrieved by [Martinez-Baez] from a dark[-]colored BMW sedan[,]" Lopez-Nunez testified at trial that Martinez-Baez "had arrived walking, [and] not in a car[;]" and (3) while the responding officer testified that Lopez-Nunez "told him that he and [Cuto-Guerrero] left the scene immediately after [Martinez-Baez] retrieved the firearm[,]" Lopez-Nunez instead "testified that he and [Cuto-Guerrero] remained on the scene for about [ten] to [fifteen] minutes." *Id*. at 13-14.

Attorney Bispels further explained that Martinez-Baez argued that Lopez-Nunez's testimony lacked credibility for conflicting with the testimony provided by Cuto-Guerrero, as she instead stated that "she did not observe a firearm[,] never heard any threats to kill uttered[, and that] when she got in

between [Martinez-Baez] and [Lopez-Nunez], [Martinez-Baez] left." *Id*. After reviewing the above arguments, however, Attorney Bispels determined that they were meritless, reasoning that "[t]he inconsistencies were minor[, t]he trial court, sitting as factfinder, determined that [Lopez-Nunez] was credible[, and that s]uch a determination [was] the province of the factfinder and should not be disturbed absent an abuse of discretion." *Id*. at 15 (unnecessary capitalization omitted).

The trial court considered Martinez-Baez's weight of the evidence claims and determined that they were also without merit, reasoning as follows:

> After reviewing the record, the verdict, while certainly disappointing to [Martinez-Baez], is not shocking. It is within the province of the finder of fact to weigh the testimony of each witness and determine which evidence it finds credible. The evidence presented at trial was not contrary to the verdicts when this Court found the testimony of the victim, . . . Lopez-Nunez, to be credible. The claim here is that this court should have rejected [Lopez-Nunez's] version of events because of the lack of 911 call and the delay in the police response, and the testimony of [Martinez-Baez's] paramour . . . Cuto-Guerrero. It should be noted that . . . Cuto-Guerrero did not indicate the incident did not occur but rather that she didn't see or hear anything. This court made factual findings based on the assessment of credibility and rendered guilty verdicts. There is no abuse of discretion. [Martinez-Baez] was not deprived of his rights, and this issue has no merit.

Trial Court Opinion, 11/13/24, at 4-5 (citation and unnecessary capitalization omitted).

Based on our review, we discern no abuse of discretion by the trial court in denying Martinez-Baez's challenge to the weight of the evidence. As explained above, this Court will give the gravest consideration to the findings

and reasons advanced by the trial court judge when reviewing its determination as to whether the verdict is against the weight of the evidence. *See Clay*, 64 A.3d at 1055. Moreover, one of the least assailable reasons for denying a new trial is the lower court's conviction that the verdict was not against the weight of the evidence. *See id*.

Here, Martinez-Baez is essentially asking this Court to reweigh the evidence to accord no weight to the testimony provided by Lopez-Nunez — which established in detail that Martinez-Baez threatened to kill him while pointing a gun at him from approximately five to six feet away — and instead accord weight only to the testimony from Cuto-Guerrero, Martinez-Baez's current romantic partner and the mother of the couple's newborn child, who stated at trial that she did not see Martinez-Baez with a gun or hear any threatening statements. This, we cannot do. *See Talbert*, 129 A.3d at 545 (holding that the weight to be accorded to the evidence and testimony presented at trial was exclusively for the fact-finder, which was free to believe all, part, or none of the evidence and testimony and to determine credibility). Rather, this Court's role is to review the exercise of discretion by the trial court in ruling on the weight claim. In this regard, we discern no abuse of such discretion.

Importantly, we note that the trial court judge determined that Martinez-Baez's guilty verdicts did not shock his conscience. We further emphasize that although the trial court heard conflicting testimony from

Lopez-Nunez and Cuto-Guerrero, it was free to credit the testimony provided by Lopez-Nunez and to reject as non-credible the testimony provided by Cuto-Guerrero. Underlying this credibility determination, we highlight that Cuto-Guerrero: (1) voluntarily accompanied Lopez-Nunez to city hall to file a police complaint and speak with the police regarding Martinez-Baez's earlier behavior; (2) did not object to any of Lopez-Nunez's statements to police when they later investigated the complaint, instead assisting with the investigation by answering the officers' questions; (3) sought and obtained a protection from abuse order immediately following this conversation with police; and (4) only indicated at trial that she did not see a gun nor hear much of what Martinez-Baez and Lopez-Nunez were arguing about, despite the fact that she placed herself directly in the middle of the confrontation. On this record, we discern no abuse of discretion by the trial court in denying Martinez-Baez's weight challenge.

As our independent review of the record discloses no non-frivolous issue that counsel may have missed, we grant Attorney Bispels' petition to withdraw and affirm Martinez-Baez's judgment of sentence. *See **Dempster*** 187 A.3d at 271.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 07/14/2025